CUAUHTEMOC ORTEGA (Bar No. 257443)
Federal Public Defender
DEBORAH E. GONZALEZ (Bar No. 310153)
(E-Mail: Deborah_Gonzalez@fd.org)
Deputy Federal Public Defender
321 East 2nd Street
Los Angeles, California 90012-4202
Telephone: (213) 894-2854
Facsimile: (213) 894-0081

Attorneys for Defendant
SEAN SCHOEPFLIN

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

### WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>        Plaintiff,<br><br>        v.<br><br>SEAN SCHOEPFLIN,<br><br>        Defendant. | Case No. CR 22-00121-FMO<br><br>**BRIEF FOLLOWING HEARING ON APPLICATION TO RECONSIDER DETENTION ORDER** |

Sean Schoepflin, by and through his counsel of record, Deputy Federal Public Defender Deborah E. Gonzalez, hereby submits this brief following the hearing on his application to reconsider this Court's order of detention.

Respectfully submitted,

CUAUHTEMOC ORTEGA
Federal Public Defender

DATED: May 11, 2022       By  */s/ Deborah E. Gonzalez*

DEBORAH E. GONZALEZ
Deputy Federal Public Defender
Attorney for SEAN SCHOEPFLIN

## TABLE OF CONTENT

**PAGE**

I. INTRODUCTION ................................................................................................ 1

II. STATEMENT OF FACTS ................................................................................. 1

III. ARGUMENT .................................................................................................... 4

    A.    This Court Has Authority to Reconsider its Prior Determination to Hold a Detention Hearing ................................................................... 4

        1.    The BRA Allows the Court to Reconsider its Prior Determination ......................................................................... 4

        2.    The Federal Rules of Criminal Procedure Allow the Court to Reconsider its Prior Determination ................................ 7

    B.    This Court May Not Consider Danger to the Community in Making a Determination as to Whether to Grant Mr. Schoepflin Bail ...................... 7

IV. CONCLUSION ................................................................................................ 11

i

# TABLE OF AUTHORITIES

**PAGE(S)**

**Federal Cases**

*United States v. Byrd,*
  969 F.2d 106, 109-110 (5th Cir. 1992)...............................................9, 10

*United States v. Himler,*
  797 F.2d 156 (3d Cir. 1986) ...................................................................8, 9

*United States v. Martin,*
  226 F.3d 1042 (9th Cir. 2000) ...................................................................7

*United States v. Motamedi,*
  767 F.2d 1403 (9th Cir. 1984) ...................................................................9

*United States v. Nwabueze,*
  Case No. CR 10-00411-MMM, Dkt No. 36 (C.D. Cal. 2010) .................10

*United States v. Ploof,*
  851 F.2d 7, 10-11 (1st Cir. 1988) ..............................................................9

*United States v. Salerno,*
  481 U.S. 739 (1987)..............................................................................1, 11

*United States v. Twine,*
  344 F.3d 987 (9th Cir. 2003) (per curiam) ................................................9

**Federal Statutes**

18 U.S.C. § 3142............................................................................*passim*

**Other Authorities**

Fed. R. Crim. Proc. 57(b).............................................................................7

Fed. R. Civ. Proc. 60(b)..............................................................................7

1

## MEMORANDUM OF POINTS AND AUTHORITIES

2    "In our society liberty is the norm, and detention prior to trial or without trial is

3                          the carefully limited exception."

4              -   *United States v. Salerno*, 481 U.S. 739 (1987).

5                            ## I. INTRODUCTION

6          Mr. Schoepflin is not charged with a violent crime and he does not pose a serious

7    risk of flight.  He is the kind of person whom the Bail Reform Act ("BRA") recognizes

8    must be released on appropriate conditions of bond.  In deciding the application for

9    reconsideration before it, this Court has authority to reconsider its prior decision that

10   the government is entitled to a detention hearing in light of new information obtained

11   by the defense.  Moreover, this Court may not base a decision to detain Mr. Schoepflin

12   on a consideration of community safety.  In light of the controlling law set forth in this

13   brief as well as the arguments made during the original bond hearing and the

14   reconsideration hearing, the Court should issue an order releasing Mr. Schoepflin on

15   appropriate conditions, just as it released his co-defendant and girlfriend, Erika Leon.

16                         ## II. STATEMENT OF FACTS

17         Mr. Schoepflin is charged with wire fraud and money laundering in an alleged

18   fraud scheme against the U.S. Small Business Administration.  (Dkt No. 26

19   (Indictment).)  He was arrested on March 18, 2022, and made his initial appearance that

20   afternoon before this Court.[1]  (Dkt Nos. 6 (Report Commencing Criminal Action), 8

21   (Minutes of Initial Appearance and Detention Hearing).)  At that hearing, the

22   government requested a detention hearing, arguing that it was entitled to one because

23   the case involved a serious risk that Mr. Schoepflin will flee, under 18 U.S.C. Section

24   3142(f)(2).  (Dkt No. 7 at 4 (Government's Notice of Request for Detention).)  The

25   Court agreed and held a detention hearing.  (Dkt No. 10 at 1 (Order of Detention).)  At

26   that hearing, the Court denied bail, finding that no combination of conditions would

27

28
          ───────────────

     [1] All references to "this Court" refer to the Honorable Margo A. Rocconi.

                                         1

1 | reasonably assure Mr. Schoepflin's appearance or the safety of any person or the
2 | community. (*Id.*)  It based this finding on the nature and circumstances of the offense
3 | charged, a lack of bail resources, the nature of Mr. Schoepflin's previous criminal
4 | convictions, and previous failure to appear or violations of probation, parole, or release.
5 | (*Id.* at 2.)

6 | Following the hearing, undersigned counsel obtained more information about
7 | Mr. Schoepflin's prior criminal history.  Specifically, undersigned counsel obtained a
8 | copy of a judgment and an early release order for a Texas case.  These documents
9 | demonstrated that the Texas judge had placed Mr. Schoepflin on a ten-year, deferred-
10 | adjudication diversion with strict conditions, including the payment of a $25,000 fine,
11 | 400 hours of community service, reporting to a community supervision officer, and
12 | completely abstaining from alcohol.  Mr. Schoepflin did so well on his diversion that
13 | the Court terminated probation six years early and dismissed the case.  (*See* Exhibit A.)

14 | Counsel also obtained a copy of an Arizona traffic court docket demonstrating
15 | that Mr. Schoepflin made an appearance in a case in which a warrant had been issued
16 | for a failure to appear on a speeding ticket.  At that appearance, the Judge dismissed
17 | both the failure to appear and the underlying speeding ticket.  (*See* Exhibit B.)
18 | Following the initial appearance and detention hearing, undersigned counsel also
19 | obtained the phone number of the mother of Mr. Schoepflin's daughter and spoke with
20 | her.  Ms. Larson agreed to be a surety, offering to sign a $50,000 affidavit of surety
21 | without justification.[2]  (Declaration of Deborah E. Gonzalez, ¶ 3.)  Counsel also
22 | obtained a photograph of some of Mr. Schoepflin's masonic lodge membership cards

---

25 | [2] Ms. Larson's full name is Guadalupe Lizette Larson (nee Gallardo).  Following
26 | the bond reconsideration hearing, undersigned counsel learned that she had had a typo in Ms. Larson's phone number and had provided the wrong phone number to Pretrial Services, which is why Pretrial Services had been unable to reach her prior to the May
27 | 4, 2022, reconsideration hearing. (Gonzalez Decl., ¶ 4.)  Upon learning of the mistake, undersigned counsel spoke with Ms. Larson and provided her with the Pretrial Services
28 | Officer's phone number.  The two have now spoken and Ms. Larson has confirmed to Pretrial Services that she is willing to be a surety in this case.  (*Id.*)

1    and provided more information about Mr. Schoepflin's history to the Pretrial Services
2    Officer who wrote the Pretrial Services Report in this case.[3]  (*Id.*, ¶ 2; Exhibit C.)

3            On April 27, 2022, the defense requested that this Court reconsider its prior order
4    of detention based on changed circumstances.  (Dkt No. 40 (Application for
5    Reconsideration of Detention).)  At that hearing, the defense explained that 1) in light
6    of this new information, the government could not carry its burden of showing that Mr.
7    Schoepflin poses a serious of risk of flight, and therefore the Court should conclude
8    that the government is not entitled to a detention hearing and that Mr. Schoepflin must
9    be released on conditions of bond; and 2) even if the Court could not reconsider its
10   prior finding that the government was entitled to a detention hearing or even if the
11   Court did reconsider its prior finding but continued to conclude that the government
12   was still able to meet its burden of demonstrating entitlement to a detention hearing, the
13   Court should release Mr. Schoepflin on conditions of bond regardless because
14   appropriate conditions could be imposed.  The defense also explained that in
15   determining whether to release Mr. Schoepflin on bond, the Court could not consider
16   whether Mr. Schoepflin posed a danger to the community, although the defense did
17   describe conditions that could be imposed that would reasonably assure the safety of
18   the community.  The Court directed the parties to brief the two legal arguments made
19   by defense counsel and took the matter under submission.  (Dkt No. 42 (Minutes of
20   Detention Hearing).)  This brief follows.

21   _____

22          [3] Specifically, undersigned counsel informed Pretrial Services that prior to
     moving to California, Mr. Schoepflin lived in Tucson, Arizona for around ten years.
23   (Gonzalez Decl., ¶ 4.)  He has been very active in the free mason society there.  (*Id.*)
     After working at the car dealership listed in the Pretrial Services Report, he started a
24   company called Green Nicotine, which provided high-quality electronic cigarettes that
     did not contain carcinogens and did not market to children.  (*Id.*)  It was during his
25   work as CEO of Green Nicotine that Mr. Schoepflin traveled to China, which was
     referenced in the Pretrial Services Report.  (*Id.*)  Counsel also informed the Pretrial
26   Services Officer that Mr. Schoeplin met Ms. Larson in 2006.  They were together until
     2010, shortly after the birth of their daughter.  (*Id.*)  During a period of difficulty in Ms.
27   Larson's life when their daughter was an infant, Mr. Schoepflin stepped in and became
     the primary caregiver for their daughter.  (*Id.*)  Ms. Larson is now the primary
28   caregiver.  However, Mr. Schoepflin remains close with his daughter, whom he visits
     and helps provide for financially.  (*Id.*)

# III. ARGUMENT

**A.    This Court Has Authority to Reconsider its Prior Determination to Hold a Detention Hearing**

The first reason this Court should release Mr. Schoepflin on bond is because in light of the new information discussed *supra*, the Court should reconsider its prior determination that the government has demonstrated that he poses a serious risk of flight.  In so doing, the Court should conclude that the government is not entitled to a detention hearing and it should set conditions of release.

### 1.    The BRA Allows the Court to Reconsider its Prior Determination

The BRA splits the determination of detention versus release into two parts.  First, the Court must determine whether the government is entitled to a detention hearing at all.  18 U.S.C. § 3142(f).  If not, then the Court must order the person released on appropriate conditions.  18 U.S.C. § 3142(a), (b), (c).   If the Court finds that the government is entitled to a detention hearing, then the Court holds such a hearing to determine whether there are conditions that can be imposed that would reasonably assure the person's appearance and the safety of the community.  18 U.S.C. § 3142(f).

The Act allows for reopening of the bail decision, stating that,

> [t]he hearing may be reopened, before or after a determination by the judicial officer, at any time before trial if the judicial officer finds that information exists that was not known to the movant at the time of the hearing and that has a material bearing on the issue whether there are conditions of release that will reasonably assure the appearance of such person as required and the safety of any other person and the community.

18 U.S.C. § 3142(f).

The BRA is not a model of clarity and it is therefore unsurprising that the text of this subsection is ambiguous.  It is not clear from the text of this provision whether Congress intended to allow reopening of just the detention hearing or whether it also

4

1   intended to allow reopening of the predicate hearing to determine whether the
2   government has demonstrated entitlement to a detention hearing in the first place.
3   Undersigned counsel has been unable to locate any cases on Westlaw in which a Court
4   has decided this issue, either.

5       The language of the provision appears to support the latter interpretation,
6   however.  Indeed, if the provision were only intended to allow for reopening of the
7   detention hearing, then it would not have been necessary for Congress to write that "the
8   hearing" could be reopened "*before* . . . a determination by the judicial officer."  It
9   makes no sense to write that a court could reopen a hearing that it has not yet
10  concluded.  Rather, it gives effect to this provision of the BRA to read it as allowing the
11  Court to reopen the predicate hearing regarding whether to hold a detention hearing
12  either before or after it has held the detention hearing.

13      The legislative history behind the BRA supports the latter interpretation as well.
14  Specifically, in a Senate Report accompanying the Act, the Committee on the Judiciary
15  expressed its view that under the statute release would be "appropriate for the majority
16  of federal defendants."  S. REP. NO. 225, 98th Cong., 1st Sess. at 20 (1983), 1984
17  U.S.C.C.A.N. 3182, 1983 WL 25404, at *12.  Recognizing that a pretrial detention
18  statute may be "constitutionally defective if it fails to provide adequate procedural
19  safeguards or if it does not limit pretrial detention to cases in which it is necessary to
20  serve the societal interests it is designed to protect," the Committee explained that the
21  Act only provides for detention in limited cases and that it had carefully drafted the Act
22  in order to serve those purposes.  *Id.* at 8.  Reading the Act to allow a Court to
23  reconsider a prior decision to hold a detention hearing in light of new evidence
24  demonstrating that a person does not pose a serious risk of flight furthers the doctrine
25  of constitutional avoidance in the manner Congress intended.  That is, one can read the
26  Act in a way that is consistent with the Due Process Clause by allowing for appropriate
27  procedural safeguards (such as reopening the predicate hearing) so as to ensure that
28

only those individuals for whom detention serves societal interests are detained (ie, only those who actually pose a serious risk of flight).

To take an extreme example, imagine a person is arrested who has a common name and the Pretrial Services Report—due a typo in inputting the person's birth date—erroneously lists a number of failures to appear and outstanding warrants for pretrial release violations that actually belong to someone else.  The defendant before the Court in fact has no prior criminal history, but defense counsel is unable to demonstrate this fact at the initial appearance.  Based on the Pretrial Services Report, upon the government's motion, the Court finds that the person poses a serious risk of flight and holds a detention hearing.  At that hearing, the Court concludes that no combination of conditions could mitigate the risk of nonappearance since the person had so many prior failures to appear and violations of pretrial release in his past.   After the hearing, however, defense counsel obtains proof that the person listed in the Pretrial Services Report is another individual with a different birthdate and that a search of criminal records with the client's correct birth date demonstrates that the client has no criminal history at all.  In that situation it would be contrary to the purpose of the BRA to conclude that the Court could not reopen the predicate hearing regarding whether the government is entitled to a detention hearing in order to allow the Court to reassess bail in light of the new facts.

For all the foregoing reasons, the BRA gives the Court authority to reconsider a prior determination that the government has demonstrated that a defendant poses a serious risk of flight.  For the reasons stated at the reconsideration hearing, the Court should do so and should find that the government has not demonstrated that Mr. Schoepflin poses a serious risk of flight and that he therefore must be released on appropriate conditions.

6

## 2.     The Federal Rules of Criminal Procedure Allow the Court to Reconsider its Prior Determination

Even if the Court were to decide that reconsideration is not authorized by Section 3142(f), a motion to reconsider is a cognizable motion in federal criminal practice. *See, e.g., United States v. Martin*, 226 F.3d 1042, 1047 n.7 (9th Cir. 2000). In deciding a motion to reconsider, criminal courts generally look to the rules governing equivalent motions in civil proceedings. *See* Fed. R. Crim. Proc. 57(b) ("A judge may regulate practice in any manner consistent with federal law, these rules, and the local rules of the district."). Federal Rule of Civil Procedure 60(b) permits relief from a final order when there is "newly discovered evidence that, with reasonable diligence, could not have been discovery" earlier, or for "any other reason that justifies relief." Fed. R. Civ. Proc. 60(b).

Here, as is the norm in this district, counsel met Mr. Schoepflin and shortly thereafter received the Pretrial Services report and made the bail argument on his behalf. There was not time to perform independent research on the criminal history listed in that report prior to making the bail argument. Nor had counsel obtained Ms. Larson's phone number prior to the bail hearing. Under these circumstances, the information counsel has obtained since the initial appearance and detention hearing is both newly discovered evidence that, with reasonable diligence, could not have been discovered previously, and a good reason justifying the requested relief of reconsideration and bond.

Accordingly, the Court can—and should—reconsider its prior determination under Federal Rule of Criminal Procedure 57(b) and Federal Rule of Civil Procedure 60(b).

## B.     This Court May Not Consider Danger to the Community in Making a Determination as to Whether to Grant Mr. Schoepflin Bail

The second legal issue counsel raised with the Court at the reconsideration hearing was the fact that because the government is only even arguably entitled to a

7

1  detention hearing in this case under Section 3142(f)(2), the Court cannot detain Mr.

2  Schoepflin based on a finding of danger to the community.

3          Only three categories of defendants may be detained prior to trial: 1) those

4  charged with certain crimes Congress has deemed especially dangerous (18 U.S.C. §

5  3142(f)(1)); 2) those who pose a serious risk of flight (18 U.S.C. § 3142(f)(2)); and 3)

6  those who pose a serious risk of obstructing justice (18 U.S.C. § 3142(f)(2)).  *See* 18

7  U.S.C. § 3142(f); Bail, 50 Geo. L.J. Ann. Rev. Crim. Proc. 394, 397 (2021)[4] ("If at the

8  Initial Appearance the government requests that the defendant be detained, the judge is

9  *only* authorized to hold a detention hearing and detain the defendant if one of the

10  factors in § 3142(f)(1) or (f)(2) is satisfied."); S. REP. NO. 225, 98th Cong., 1st Sess. at

11  20 (1983), 1984 U.S.C.C.A.N. 3182, 3203, 1983 WL 25404, at *20 ("Because

12  detention may be ordered under Section 3142(e) only after a detention hearing pursuant

13  to subsection (f), the requisite circumstances for invoking a detention hearing in effect

14  serve to limit the types of cases in which detention may be ordered prior to trial.").

15          The government moved for a detention hearing in this case on the basis that Mr.

16  Schoepflin poses a serious risk of flight under 18 U.S.C. Section 3142(f)(2).  (Dkt No.

17  10.)  In such a case, if the Court finds that the government has met its burden of

18  demonstrating a serious risk of flight[5], the Court must hold a detention hearing and

19  consider whether there are conditions of release that will reasonably assure the

20  appearance of the person.  *Id.*  If there are, then the Court must order the person

21  released on such conditions.  *Id.*  If there are not, then the Court must order the person

22  detained.  *Id.*

23

24

25          [4] This chapter on bail is attached as Exhibit D to this motion for the Court's
26  convenience.

        [5] The government must proffer some evidence to demonstrate its entitlement to a
27  bail hearing under 18 U.S.C. § 3142(f)(2).  *See U.S. v. Himler*, 797 F.2d 156, 160 (3d
    Cir. 1986) (explaining that when only basis for detention is § 3142(f)(2)(A), defendant
28  "may be detained only if the record supports a finding that he presents a serious risk of
    flight.").

8

As the Ninth Circuit and every other circuit to have considered the questions has concluded, where, as here, the government's entitlement to a detention hearing arises only from a serious risk of flight under Section 3142(f)(2), the Court cannot consider a person's dangerousness in making that bail determination.[6]  *United States v. Twine*, 344 F.3d 987 (9th Cir. 2003) (per curiam) (reversing detention order based on dangerousness finding in a case charging the defendant with being a felon in possession of a firearm because it was not a crime covered by 18 U.S.C. Section 3142(f)(1), and citing, with approval, *United States v. Byrd*, 969 F.2d 106, 109 (5th Cir. 1992), *United States v. Ploof*, 851 F.2d 7, 10-11 (1st Cir. 1988), and *United States v. Himler*, 797 F.2d 156,160 (3d Cir. 1986)); *United States v. Motamedi*, 767 F.2d 1403 (9th Cir. 1984) ("Because the Government has failed to establish by a preponderance of the evidence that Motamedi poses a flight risk, the [government's] motion for reconsideration [of the Ninth Circuit's reversal of a district court's pretrial detention order] must be denied."); *see also Byrd*, 969 F.2d at 109 ("A [detention] hearing can be held only if one of the six circumstances listed in (f)(1) and (2) is present[.] . . . [A] defendant's threat to the safety of other persons or to the community, standing alone, will not justify pre-trial detention."); *United States v. Ploof*, 851 F.2d 7, 10-11 (1st Cir. 1988) ("[W]here detention is based on dangerousness grounds, it can be ordered only in cases involving one of the circumstances set forth in § 1342(f)(1)."); *Himler*, 797 F.2d at 160 (("Mr. Himler's case does not involve any of the offenses specified in subsection (f)(1), nor has there been any claim that he would attempt to obstruct justice or intimidate a witness or juror.  Accordingly, we hold that the statute does not authorize the detention of the defendant based on danger to the community[.] . . . He may be detained only if the record supports a finding that he presents a serious risk of flight."); Order Granting

---

[6] In Section 3142(f)(2) cases, the Court may consider community safety in determining which conditions of release to impose, but it may not deny release based on such consideration.  *Compare* 18 U.S.C. § 3142(f)(2) (permitting a detention hearing in a case that presents a serious risk of flight) *with* 18 U.S.C. § 3142(c) (permitting the Court to set conditions designed to assuage risk of danger).

9

Defendant's Application for Review of Magistrate Judge's Detention Order, *United States v. Nwabueze*, Case No. CR 10-00411-MMM, Dkt No. 36, at 11 (C.D. Cal. 2010) (Attached as Exhibit E) ("The court therefore agrees with Judge Mumm and defendant that *Twine* stands for the proposition that a court may only order pretrial detention under the Bail Reform Act based on the danger a defendant poses to the community if the defendant is charged with a crime described in § 3142(f)(1)").

It has become a routine practice in this district for attorneys from both sides to argue in each case about whether a defendant is a flight risk and whether he is a danger, and for judges to base bail and detention decisions on both factors. This practice has likely developed as a result of both the unclear language and structure of the BRA as well as the fact that bond arguments occur just hours after a person first is listed on the court's calendar and with little time for legal research or much thoughtful preparation of argument. Perhaps it has developed because, as the Fifth Circuit recognized, it is "surprising . . . that even after a hearing, detention can be ordered [under the BRA] only in certain designated and limited circumstances, irrespective of whether the defendant's release may jeopardize public safety." [7] *United States v. Byrd*, 969 F.2d 106, 109-110 (5th Cir. 1992).

Whatever the reason for the practice, it is contrary to the BRA and the binding Ninth Circuit caselaw interpreting it. Rather, as the cases cited *supra* make clear, unless the government is entitled to a detention hearing because the charged crime is one that Congress has found to be especially dangerous and therefore enumerated in Section 3142(f)(1), dangerousness is not an appropriate consideration for denying release. Any other interpretation of the statute reads Section (f)(1) out of it. Indeed, it makes no sense that a Court could detain someone on a ground that does not let the government seek detention in the first place.

---

[7] To the extent the government believes that Courts should have the power to detain a pretrial defendant based on dangerousness concerns although he is not charged with an offense listed in Section (f)(1), that "argument . . . is best addressed to Congress as opposed to the court." *Nwabueze*, at 12 n.20.

The legislative history of the BRA further supports this conclusion: prior to 1984, dangerousness was not an appropriate consideration for pretrial detention at all. Congress passed the BRA in part to address crimes committed by individuals on federal pretrial release. Referring to Subsection (f)(2), the Senate Report accompanying the Act notes that "there is a small but identifiable group of particularly dangerous defendants as to whom neither the imposition of stringent release conditions nor the prospect of revocation of release can reasonably assure the safety of the community or other persons. It is with respect to this limited group of offenders that the Courts must be given the power to deny release pending trial." S. Rep. 98-225 at *6-*7.

As is apparent from this history, Congress carefully limited the instances in which a Court could detain based on danger to those enumerated in Section 1342(f)(1). Indeed, the Supreme Court recognized in *Salerno* that "the Bail Reform Act carefully limits the circumstances under which detention may be sought to the most serious of crimes." *Salerno*, 481 U.S. at 747. If a person is not charged with a crime listed in Section 1342(f)(1), the Court may not consider community dangerousness in deciding to detain that person.

## IV. CONCLUSION

For the foregoing reasons, the defense respectfully requests that this Court reconsider its prior order of detention and issue an order releasing Mr. Schoepflin on bond under the conditions requested in Docket No. 40.

Respectfully submitted,

CUAUHTEMOC ORTEGA
Federal Public Defender

DATED: May 11, 2022        By  */s/ Deborah E. Gonzalez*

DEBORAH E. GONZALEZ
Deputy Federal Public Defender
Attorney for SEAN SCHOEPFLIN

**DECLARATION OF DEBORAH E. GONZALEZ**

11

I, Deborah E. Gonzalez, hereby state and declare that the following is true to the best of my knowledge:

1.     I am a Deputy Federal Public Defender in the Central District of California appointed to represent Mr. Sean Schoepflin in the above-captioned matter.

2.     Following the initial appearance in this case, I obtained a copy of a judgment and an early release order for a Texas case of Mr. Schoepflin's (attached as Exhibit A), as well as a copy of an Arizona traffic court docket (attached as Exhibit B), Ms. Larson's phone number, and a photograph of some of Mr. Schoepflin's masonic lodge membership cards.

3.     I spoke with Ms. Larson several times.  She agreed to be a surety, offering to sign a $50,000 affidavit of surety without justification.  Following the bond reconsideration hearing, I learned that I had had a typo in Ms. Larson's phone number and had provided the wrong phone number to Pretrial Services, which is why Pretrial Services had been unable to reach her prior to the May 4, 2022, reconsideration hearing.  Upon learning of the mistake, I spoke with Ms. Larson and provided her with the Pretrial Services Officer's phone number.  The two have now spoken and Ms. Larson has confirmed to Pretrial Services that she is willing to be a surety in this case.

4.     I provided the Pretrial Services Officer with more information about Mr. Schoepflin's background.  Specifically, I told him that prior to moving to California, Mr. Schoepflin lived in Tucson, Arizona for around ten years.  He has been very active in the free mason society there.  After working at the car dealership listed in the Pretrial Services Report, he started a company called Green Nicotine, which provided high-quality electronic cigarettes that did not contain carcinogens and did not market to children.  It was during his work as CEO of Green Nicotine that Mr. Schoepflin traveled to China, which was referenced in the Pretrial Services Report.  I also informed the Pretrial Services Officer that Mr. Schoeplin met Ms. Larson in 2006. They were together until 2010, shortly after the birth of their daughter.  During a period of difficulty in Ms. Larson's life when their daughter was an infant, Mr. Schoepflin

12

stepped in and became the primary caregiver for their daughter.  Ms. Larson is now the primary caregiver.  However, Mr. Schoepflin remains close with his daughter, whom he visits and helps provide for financially.

I hereby declare that the foregoing is true and correct.

DATED: May 11, 2022                          /s/ Deborah E. Gonzalez
                                             DEBORAH GONZALEZ

13